IN RE:                                      )
                                            )
DAVID and TELENA HODGES,                    )      No. 3:13-CV-361
                                            )      Judge Curtis L. Collier
          Debtors.                          )

# MEMORANDUM

Before the Court is Chapter 7 bankruptcy trustee John P. Newton's (the "Trustee") appeal from an order of the United States Bankruptcy Court for the Eastern District of Tennessee granting Debtors David and Telena Hodges' (the "Debtors") motion to compel abandonment of property. The Trustee filed a brief (Court File No. 5), and the Debtors filed a brief in opposition (Court File No. 6). After giving careful consideration to the parties' arguments, the relevant case law, and the evidentiary record, the Court **AFFIRMS** the judgment of the bankruptcy court.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

This appeal does not involve factual disputes. The parties stipulated to relevant facts before the bankruptcy court, and neither party objects to the bankruptcy court's following account of the facts:

> On December 20, 2006, the Debtors, acting *pro se*, filed a Voluntary Petition commencing their case under Chapter 7 of the Bankruptcy Code. On February 12, 2007, counsel for the Debtors entered his appearance and, on February 16, 2007, the Debtors filed an amended Voluntary Petition and amended schedules. In their amended schedules, the Debtors valued the Rutledge Pike Property at $172,000.00, subject to first and second mortgages held by First Tennessee Bank totaling $143,593.32. On February 21, 2007, an Order Converting Case Under Chapter 7 to a Case Under Chapter 13 was entered converting the Debtors' case to Chapter 13.
>
> At the end of their Chapter 13 bankruptcy case, because they had not filed tax returns, the Chapter 13 Trustee filed a motion to reconvert to Chapter 7. The Debtors could not pay the $8,000.00 that the Chapter 13 Trustee determined would have been

received and paid into their bankruptcy estate had they timely filed their returns, and the case was reconverted to Chapter 7 on May 31, 2012. On October 19, 2012, the Chapter 7 Trustee filed a Notice of Assets, and Beverly Lemings was authorized to be employed by the estate to sell the Rutledge Pike Property; however, to date, there have been no offers to purchase the property.

The Debtors claimed a homestead exemption in the amount of $7,500.00 and reaffirmed their obligations to First Tennessee Bank which, as of September 5, 2012, totaled $89,276.51, the amount owing after the *Debtors made payments in the aggregate amount of $54,316.81 through their Chapter 13 plan*. Additionally, the Noland Company had recorded judgment liens on May 12, 2006, and November 16, 2006, in the amounts of $6,928.33 and $63,300.89, respectively. However, the Chapter 7 Trustee and Noland Company agreed that, upon the sale of the Rutledge Pike Property, the estate would receive 50% of any equity realized and Noland Company would release its judgment liens. Thereafter, on January 21, 2013, the Debtors filed the Motion to Compel Abandonment.

(Court File No. 1-24, pp. 3-4) (internal citations omitted) (emphasis added). Based on these facts, the bankruptcy court granted the Debtors' motion to compel abandonment of the property. The Trustee appealed, and the Court held a hearing on April 23, 2014 where the parties presented their arguments.

## II. STANDARD OF REVIEW

The Court has appellate jurisdiction to hear appeals from final judgments and orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is considered clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). "[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the

witnesses." Fed. R. Bankr. P. 8013; *see Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, [the Federal Rules of Bankruptcy Procedure require] even greater deference to the trial court's findings . . . .").

### III. DISCUSSION

The Trustee asserts the bankruptcy court erred in reaching two conclusions: (1) that the mortgage payments made by the Debtors while they were in Chapter 13 bankruptcy belonged to them, and not the estate, upon conversion to Chapter 7 bankruptcy, and (2) that the remaining equity the estate had in the Debtor's home was of inconsequential value, and thus the Trustee should be compelled to abandon the property rather than having is sold.

#### A. Equity from Chapter 13 Mortgage Payments

The bankruptcy court concluded that the relevant statute, 11 U.S.C. § 348(f), and the case law interpreting it, provide that increases in the equity of the Debtors' property occuring during the Chapter 13 period (including equity produced by the Debtors paying down their mortgage) is not "property of the estate" upon conversion from a Chapter 13 to a Chapter 7 bankruptcy. Thus the $54,316.81 in mortgage payments made by the Debtors during the Chapter 13 bankruptcy period belonged to them and not the Chapter 7 estate. The bankruptcy court properly applied the law.

##### 1. Statute and Case Law

Title 11, U.S.C. § 348(f) determines what is included in a bankruptcy estate when the bankruptcy is converted from Chapter 13 to Chapter 7:

3

(f)(1) Except as provided in paragraph (2),[1] when a case under chapter 13 of this title is converted to a case under another chapter under this title—
  (A) *property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition,[2] that remains in the possession of or is under the control of the debtor on the date of conversion*;
  (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7, with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan; and
  . . . .

11 U.S.C. 348(f) (emphasis added). It should be noted that although § 348(f)(1)(B) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), because the issue in this case is controlled by § 348(f)(1)(A), which was not amended by BAPCPA, the Court may rely on cases construing § 348(f)(l)(A) before BAPCPA came into effect. Further, cases coming after the BAPCPA amendment have not challenged the established meaning of § 348(f)(l)(A).

Section 348(f) is intended to encourage debtors to opt for Chapter 13 bankruptcies by preventing property (including equity) gained during the Chapter 13 period from going into the Chapter 7 estate upon conversion. The statue was enacted to "resolve a split in the law about what property is included in the bankruptcy estate when a debtor converts from Chapter 13 to Chapter 7." *In re Pruneskip*, 343 B.R. 714, 716 (Bankr. M.D. Fla. 2006). As the United States Court of Appeals for the Third Circuit notes, "[t]he legislative history of § 348(f) supports that Congress's intended

---

[1] Paragraph 2 provides that "[i]f the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348. This section is not applicable to the instant case.

[2] The "date of filing of the petition" refers to the filing of the *Chapter 13 petition*. *See In re Michael*, 699 F.3d 305, 310 (3d Cir. 2012) (citing 11 U.S.C § 348(a)).

4

outcome is that payments held by the Chapter 13 trustee revert to the debtor on conversion" so as to avoid a "'serious disincentive to file chapter 13 filings.'" *In re Michael*, 699 F.3d 305, 314-15 (3d Cir. 2012) (quoting H.R.Rep. No. 835, 103d Cong., 2d Sess. 57 (1994)). The Third Circuit concluded that "the date of the filing of the petition is the date the debtor *filed the Chapter 13 petition*, [which] suggests that property of the Chapter 13 estate acquired post-petition is excluded from the property of the new Chapter 7 estate." *In re Michael*, 699 F.3d 305, 310 (3d Cir. 2012); *see also In re Nichols*, 319 B.R. 854, 857 (Bankr. S.D. Ohio 2004) ("Congress did not intend that a chapter 13 debtor should lose the benefit of any equity accrued in an asset because of said debtor's compliance with the chapter 13 plan payments."). The court in *In re Nichols* explained that

> Congress was concerned that transferring the benefits made by a debtor by diligently making payments under a chapter 13 plan to the unsecured creditors if the case converted to one under chapter 7 "would create a serious disincentive to chapter 13 filings because debtors would fear that property attained after filing, *including equity created by payment of secured debts*, could be lost if the case were converted. The legislative history also states that equity created during the chapter 13 case is not property of the estate."

319 B.R. at 856 (quoting Collier on Bankruptcy ¶ 348.07[1] (15th ed. rev'd 2004))[3] (emphasis in case); *see also In re Lynch*, 363 B.R. 101, 107 (B.A.P. 9th Cir. 2007) ("Excluding equity resulting from debtors' payments on loans secured by their residence and property appreciation subsequent to their chapter 13 filing in a case converted to chapter 7 serves the congressional purpose of encouraging chapter 13 reorganizations over chapter 7 liquidations, as reflected in the legislative history."); *In re Salvador B.*, No. 2:05-CV-1107-GEB, 2006 WL 3300770, at *4 (E.D. Cal. Nov. 14, 2006) ("The legislative history indicates that equity created during the chapter 13 case is not

---

[3] Collier on Bankruptcy goes on to explain that "payments on a secured claim during a bankruptcy case prior to conversion do not normally create equity that can become property of the estate. Property of the estate in a converted case is governed by section 348(f)(1)." ¶ 348.07[4].

5

property of the estate.") (internal quotation marks and brackets omitted).

In addition to these general constructions of the statute, specific holdings demonstrate that increases in equity produced by payments made as part of Chapter 13 plans revert to debtors and not the Chapter 7 estate upon conversion. *See*, *e.g.*, *In re Woodland*, 325 B.R. 583, 586 (Bankr. W.D. Tenn. 2005) (holding that "[s]ince property of the Chapter 7 estate relates back to what was property of the bankruptcy estate when the Chapter 13 was commenced and since the Debtor still has the vehicle in his possession, the present 'equity' in the vehicle does not belong to the Chapter 7 trustee or to unsecured creditors of this estate"); *Pruneskip*, 343 B.R. at 717 (holding that "the property of the estate and the Debtor's equity in the two (2) 1998 Ford Windstar is determined as of the filing date of the Chapter 13 Petition, and not the date on which the Debtor's case was converted"); *In re Boyum*, No. 05-1044-AA, 2005 WL 2175879, at *2 (D. Or. Sept. 6, 2005) ("[Section] 348(f)(1)(A) specifically limits the property of the estate upon conversion to the property of the estate, i.e, the debtor's interest in the property, as of the date the Chapter 13 petition was filed. Therefore, to the extent that appellant acquired equity in the Subaru Forester after the filing her Chapter 13 petition, such equity is not property of the estate upon conversion to Chapter 7.").

Cases postdating the 2005 BAPCPA amendment to § 348(f)(l)(B) also reach the same conclusion, contrary to the Trustee's argument. For instance, the 2012 case *In re Robinson* held the following:

> In sum, the statutory scheme of 11 U.S.C. § 348(f) indicates that the relevant date for determining property of the Chapter 7 estate after conversion from Chapter 13 is the original filing date. In this instance, at the time of their filing of the petition, the Debtors had no equity in either vehicle. *The accumulated equity in the subject automobiles, acquired by payments made pursuant to Debtors' Chapter 13 Plan, is not property of the Chapter 7 estate pursuant to 11 U.S.C. § 348(f)*.

472 B.R. 854, 857 (Bankr. M.D. Fla. 2012) (emphasis added); *see also In re Michael*, 699 F.3d 305,

315 (3d Cir. 2012).

Despite this, the Trustee argues that the 2005 amendment to § 348(f) affects the present suit. The Trustee cites two cases for this proposition. In the first, *In re Woodland*, while discussing the change to § 348(f)(l)(B) (not (A)), the court noted in dicta that "when a case is converted from Chapter 13 to Chapter 7 under the post-October 17 Code, the Debtor will not get the complete benefit of payments made under a Chapter 13 plan unless the secured claim has been paid in full under its prebankruptcy contractual terms." In the second, *In re McGregor*, the court explained:

> This amendment made Congress's intent clear. Following the 2005 amendment, a debtor no longer receives the benefit of a chapter 13 *valuation or determination of an allowed secured claim* upon conversion to chapter 7, as these actions taken in a chapter 13 case have no binding effect following conversion. *See generally* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 533.1, Sec. Rev. Mar. 29, 2006, www.Chl3 online.com. Thus, upon conversion, the secured creditor is owed the full amount of its claim, less whatever payments it has received. In short, it is as if no previous valuation occurred.

449 B.R. 468, 471 (Bankr. D.S.C. 2011) (emphasis added). Neither case provides convincing authority for the Trustee's position because § 348(f)(l)(B) (the section that was changed) does not actually address the issue at hand—what property interests are held by the Chapter 7 estate. Instead, the provision addresses the rights of a *secured creditor* in the context of valuation of specific property at the end of the Chapter 13 bankruptcy. It is telling that the cases discussing the amendment to § 348(f)(l)(B) deal with determining the value of collateral for *redemption* purposes.[4] That is not at issue in the present case.

The parties agree that equity in the Rutledge Pike Property increased by $54,316.81 during

---

[4] *See, e.g., In re Airhart*, 473 B.R. 178, 185 (Bankr. S.D. Tex. May 31, 2012) (explaining that the amended version of § 348(f)(1)(B) means that "valuation of collateral begins anew at conversion to Chapter 7 for purposes of redemption"); *In re Nance*, No. 07-81057, 2013 WL 2897527, at *2-4 (Bankr. M.D.N.C. June 12, 2013); *In re Griffin*, No. 13-89001C-7D, 2013 WL 781141, at *1 n.1 (Bankr. M.D.N.C. Mar. 1, 2013).

7

the Chapter 13 estate by virtue of the Debtor's payments and that the real estate itself is valued at $172,000. The only issue is whether the increase in equity goes to the Chapter 7 estate or to the Debtors. As explained above, that question is squarely answered by § 348(f)(l)(A) and the case law interpreting it. And there is no authority showing § 348(f)(l)(A) was affected by the 2005 amendment to § 348(f)(l)(B).

### 2. Additional Statutory Arguments

Failing to produce any other authority on point holding that an increase in equity during the Chapter 13 period accrues to the Chapter 7 estate upon conversion, the Trustee directs the Court's attention to other provisions of the bankruptcy code, 11 U.S.C. §§ 541(a)(7) and 1306, that do not address the issue at hand. Section 541(a)(7) provides that a bankruptcy estate comprises, inter alia, "[a]ny interest in property that the estate acquires after the commencement of the case." This provision merely indicates that newly acquired interests in property become part of an *existing* bankruptcy estate. It does not explain what happens when that estate is converted into a subsequent estate, which is what occured in the instant case. As explained above, the purpose of § 348(f) is to ensure equity acquired during a Chapter 13 bankruptcy does not go into the resulting Chapter 7 estate upon conversion (unless there is bad faith, which is not alleged here).

The Trustee also errantly points to § 1306 to support his position. This section provides that "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title—(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; . . . ." § 1306. As with § 541(a)(7), this provision simply governs what property interests are included in an existing Chapter 13 estate, not

8

what is included once the case converts to a Chapter 7 bankruptcy.

The Trustee attempts to reconcile § 348(f) with his reading of §§ 541(a)(7) and 1306 by arguing that "§ 348 only deals with assets newly acquired during the term of a Chapter 13 as opposed to existing assets that were assets at the time of the filing of the original petition" (Court File No. 5, p. 12). The Trustee provides no authority for this construction. As the cases cited above at pages 5-7 make clear, increases in equity during Chapter 13, *including in property that existed upon filing for bankruptcy*, revert to the debtors and not the Chapter 7 estate. While it could be said that under § 348 the *equity* must be "newly acquired" during the Chapter 13 bankruptcy, the underlying *asset* need not be.

Thus, in light of the authority supporting the bankruptcy court's ruling and the lack of contrary authority on point, the Court holds that the bankruptcy court did not err in ruling that the $54,316.81 increase in equity produced by the Debtors' mortgage payments during the Chapter 13 bankruptcy belongs to the Debtors, not the Chapter 7 estate, upon conversation to the Chapter 7 bankruptcy.

**B. Decision to Compel Abandonment**

The Court must now address whether the bankruptcy court erred in granting the motion to compel abandonment of the Rutledge Pike Property. Pursuant to 11 U.S.C. §§ 323(a) and 704(a)(l), when the Debtors' bankruptcy was converted from Chapter 13 to Chapter 7, the Trustee became the representative of the Debtors' bankruptcy estate during liquidation. As such, he had the responsibility to use estate property for the best interests of creditors, including selling property pursuant to 11 U.S.C. § 363. However, the Trustee's duties also included authorization to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and

9

benefit to the estate." 11 U.S.C. § 554(a). If a trustee refuses to abandon property in such a situation, the bankruptcy court may order the trustee to do so upon request of a party in interest, provided the party meets its burden of proof by presenting a *prima facie* case that the property is burdensome to the estate or of inconsequential value. § 554(b); *In re DiDario*, 232 B.R. 311, 313 (Bankr. D.N.J. 1999); *In re Dillon*, 219 B.R. 781,785 (Bankr. M.D. Tenn. 1999). The purpose of § 554(b) "is to prevent a trustee from unnecessarily selling property without value to the estate merely in order to earn a commission." *In re DiDario*, 232 B.R. at 313.

"The only issue before the court in an application for abandonment is whether there is a reason that the estate's interest in the property should be preserved or, instead, whether the property is so worthless or burdensome to the estate that it should be removed." *In re K.C. Mach. & Tool Co.*,816 F.2d 238, 246 (6th Cir. 1987) (citations omitted). Although a Chapter 7 estate's lack of equity in property generally "sets forth a prima facie case that the property is of inconsequential value and benefit to the estate," this "prima facie case can be rebutted, *e.g*., by proof that the secured creditor's liens can be subordinated to an interest of the trustee, or possibly by establishing that some other form of value or benefit would accrue to the estate by retention of the property." *Id*. at 32.

Here, the bankruptcy court found that the Chapter 7 estate had so little equity in the Rutledge Pike Property that no unsecured creditor would benefit from its sale by the estate. This relies on the correct determination, discussed above, that the $54,316.81 increase in equity produced by the Debtors' mortgage payments during the Chapter 13 bankruptcy belonged to the Debtors and not the Chapter 7 estate upon conversion to the Chapter 7 bankruptcy. The bankruptcy court explained its reasoning as follows:

> Based upon the Joint Stipulations, the Rutledge Pike Property has a value of $172,000.00 and at reconversion to Chapter 7, the Debtors' mortgage obligations to

10

First Tennessee Bank were $89,276.50. Because the equity created by the $54,316.81 in principal paid by the Debtors to First Tennessee Bank during the pendency of their Chapter 13 case is not part of the Chapter 7 estate, it must be added back to the current outstanding indebtedness, thus establishing an indebtedness of $143,593.31 at the time of the reconversion. On its face, and without regard to the Noland Company judgment liens, the Rutledge Pike Property therefore has equity approximating $28,406.69. However, the court must also factor in the Debtors' homestead exemption of $7,500.00 and expenses associated with a sale which at a minimum would pay the 6% real estate commission of $10,320.00 assuming the Rutledge Pike Property sold at the $172,000.00 value stipulated by the parties. Adding these amounts reduces the potential equity from $28,406.69 by $17,820.00 to $10,586.69. Whether the Noland Company's agreement with the Chapter 7 Trustee to accept 50% of the equity remains viable given the court's ruling, it nonetheless has liens totaling $70,229.22. If it were to accept half of the present equity, it would receive $5,293.34 leaving the Debtors' estate with a like amount, which the court can easily conclude would be insufficient to pay the Chapter 7 Trustee's commission and attorney fees.[5]

Therefore, with or without the agreement of the Noland Company to split the equity, there is no value to the Rutledge Pike Property that will benefit unsecured creditors. The court will not allow the sale of the Rutledge Pike Property when it is apparent that the funds, if any, produced by a sale would be insufficient to pay administrative expenses, much less make a distribution to unsecured creditors.

(Court File No. 1-24, pp. 11-12). The Trustee disagrees with the bankruptcy court's conclusion that it must compel abandonment, but he does not explain why. Addressing the issue in the last paragraph of his brief, the Trustee only asserts that:

to the extent the Court rules that the debtors are entitled to the benefit of the equity, the Appellant would show that the property has additional surplus equity over and above the principal reduction made during the Chapter 13 case. Nothing in the record supports the Court's ruling that even the small amount of equity should be abandoned by the Trustee.

---

[5] The bankruptcy court explained in a footnote,
Assuming the Rutledge Pike Property sold for $172,000.00, the Chapter 7 Trustee's commission computed under 11 U.S.C. § 326 (2006) would amount to $11,850.00. Additionally, Mr. Newton was appointed attorney for the Chapter 7 Trustee by an Order entered on October 19, 2012, and would, were funds available, be entitled to compensation in that capacity.
(Court File No. 1-24, p. 12 n. 4).

11

(Court File No. 5, p. 18). The Trustee does not attempt to substantiate this statement. And indeed there is no reason to hold that the bankruptcy court's assessment is incorrect. It is clear the estate's sale of the Rutledge Pike Property would not produce value for unsecured creditors. As the bankruptcy court explained, the estate would only net $5,293.34, which is not even sufficient to pay the commission and attorney fees, never mind pay any unsecured creditor. Accordingly, the Court concludes the bankruptcy court did not err in compelling abandonment of the Rutledge Pike Property pursuant to 11 U.S.C. § 554(b) on the ground that it was of inconsequential value and benefit to the estate.

## IV. CONCLUSION

For the foregoing reasons, the Court will **AFFIRM** the bankruptcy court's order compelling abandonment. Because no other issues remain in this appeal, the Court will **DIRECT** the Clerk of Court to Close the appeal.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**